# CHARLESTON.

PENNSYLVANIA R. R. CO. *v*. ROGERS.

Submitted January 17, 1902.   Decided March 21, 1903.

1.   GARNISHMENT—*Statutory Power—Jurisdiction.*
    Garnishment is the exercise of a special and limited statutory power, the requisites of which are jurisdictional.   (p. 454).

2.   SEIZURE—*Condemnation—Judgment.*
    Although, in such proceeding, there is no actual manual seizure of property by the executing officer, it is in the nature of a proceeding *in rem*, and jurisdiction of the debt or property sought to be thereby subjected must be obtained, else the court cannot pronounce judgment of condemnation against it.   (p. 454).

3.   GARNISHMENT—*Court—Condemnation.*
    Garnishment is a dual proceeding, moving against the garnishee *in personam* to compel him to answer and disclose what property and estate of the defendant he has in his hands and to hold the same subject to the order of the court, and against the property and estate itself, to extinguish the right of the defendant in it by condemnation and appropriation of it to the satisfaction of the plaintiff's claim.   (p. 455).

4.   NON-RESIDENT—*Jurisdiction—Garnishee.*
    A non-resident, temporarily in the State, may be summoned and compelled to answer as garnishee, but if, upon his answer, it be established that he is a non-resident, he cannot be subjected to further proceedings in the cause, for want of jurisdiction, unless, when garnished, he have in the State property of the defendant in his possession, or be bound to pay the defendant money or deliver to him property within the State.   (p. 456).

5.   FOREIGN CORPORATION—*Non-Resident—Garnishment.*
    Foreign corporations and non-resident individuals stand upon the same footing in respect to garnishment, except that the former are subject to garnishment when doing business in the State in which the garnishment issues in such sense and to such extent as to have become domiciled therein.   (p. 459).

6.   RAILROAD DEBTS—*Jurisdiction—Garnishment.*
    A debt due from a foreign railroad corporation, operating no railroad in this State and doing no business here other than

maintaining, jointly with other railroads, an agency relating to through freight service, and for the soliciting of freight for such company, to be handled on its lines without the State, is beyond the territorial jurisdiction of the courts of this State and not subject to garnishment here.  (p. 462).

7.  GARNISHEE.

The garnishee, in the eye of the law, is a mere stakeholder, a custodian of property or estate attached in his hands, and has no right to do any voluntary act to the prejudice of either the plaintiff or defendant in the action.  He must let the law take its course, except that he may protect himself from jeopardy or injury by unauthorized acts and proceedings. (p. 466).

8.  GARNISHEE—*Attachments.*

A garnishee cannot give jurisdiction of a debt due from him by his voluntary appearance, when not previously served with the order of attachment, nor when an attempted service is invalid.  (p. 465).

9.  NON-RESIDENT—*Service of Process—Jurisdiction.*

Omission to show in the return of service of an order of attachment upon a foreign corporation as garnishee that the agent upon whom the service was made resides in the county in which he was served, renders the service invalid, and, in such case, the court obtains no jurisdiction of the *res*, for want of service on the garnishee.  (p. 467).

10.  PROHIBITION—*Court Jurisdiction.*

Prohibition lies from a circuit court to a justice of the peace to restrain him from proceeding in an action, when the subject matter thereof is beyond his territorial jurisdiction, and also when, by reason of want of service or invalidity of service, he has not acquired such jurisdiction; although, when he has jurisdiction of the subject matter, and the question of his jurisdiction of the person depends upon some fact to be determined by him, his erroneous decision in favor of jurisdiction is only error not subjecting him to prohibition.  (p. 470).

11.  DECISIONS AFFIRMED.

In so far as *Mahany* v. *Kephart*, 15 W. Va. 609, and *Stevens* v. *Brown*, 20 W. Va. 450, hold. that the exemption laws of another State have no extra territorial force and will not be enforced by the courts of this State, they are reaffirmed. (p. 472).

Writ of error and *supersedeas* to Circuit Court, Ohio County. Action by Pennsylvania Railroad Company against W. W.

Rogers, *et als.* Judgment for defendants and plaintiff brings error.

*Reversed and Remanded.*

J. B. Sommerville, for plaintiff in error.

Caldwell & Caldwell, for defendants in error.

Poffenbarger, Judge:

This case involves the consideration of questions arising upon the invocation of the extraordinary legal remedy, prohibition, in restraint of the special and limited proceeding, known as garnishment. As prohibition lies only to restrain a court or other tribunal from proceeding without jurisdiction, or in excess of its jurisdiction, and as attachment is a purely statutory proceeding, the questions presented are, principally, jurisdictional in character, and perspicuity demands an inquiry into the nature of both proceedings. This should be preceded, however, by a statement of the case.

W. W. Rogers, a citizen of Ohio County, doing a detective and collection business, and having taken, by assignment, a large number of claims from persons residing in Pennsylvania against employees of the Pennsylvania Railroad Company, a foreign corporation, which claims that it does not own or operate any railroad or do any business in this State, instituted, before D. Z. Phillips, a justice of the peace of Ohio County, more than four hundred suits against the said non-resident employees, on the accounts so assigned, and made the said railroad company a garnishee in each of them. The service of process, as to the garnishee, was by delivering a copy of the order of attachment "to J. J. McCormick, agent of the said garnishee in charge of its business, in the city of Wheeling, in said county, there being no other person within the State of West Virginia upon whom said order of attachment can be legally served." In some of these cases, the railroad company appeared specially for the purpose of objecting to the service of process upon it, and moved to be discharged because the order of attachment issued therein had not been properly or legally served upon it. After hearing the evidence and arguments of counsel upon the motion, the justice overruled it. Then the garnishee filed its answer, admitting indebtedness, but claiming it was not liable

as garnishee for the following reasons: First, Because the justice was without jurisdiction in said cause. Second, Because said Pennsylvania Railroad Company and the principal debtor in the action were both citizens of the State of Pennsylvania, and the money due was for wages earned by the defendant as an employee of the railroad company, under a contract between him and the railroad company in Pennsylvania and was not, therefore, subject to garnishment in West Virginia. Third, Because the wages of the defendant were exempt from execution or forced sale under the laws of Pennsylvania and could not be subjected to garnishment in the State of West Virginia. The garnishee, therefore, again asked to be discharged but the motion was overruled and judgment entered against the garnishee for the amount of the indebtedness admitted. The record here shows a transcript of the proceedings in only one of these cases, that of Rogers, assignee, against James R. Snyder.

The bringing of these suits was commenced in July or August, 1901, any many judgments were rendered against the garnishee. On the 10th day of January, 1902, the Pennsylvania Railroad Company presented to a judge of the circuit court of Ohio County its petition, praying for a writ of prohibition to restrain Rogers and Phillips and each of them "from proceeding further in their said acts, doings and proceedings, and from instituting any other or further proceedings against" the petitioner "either in regard to the said claims of the said Rogers against" the petitioner, "arising out of the assignment of claims to the said Rogers by any person, against" the petitioner's, "said employees residing in the said State of Pennsylvania." In addition to the facts hereinbefore set out, the petition contains the following averment: "Your petitioner does not own and does not operate any railroad or any part of a railroad in the county of Ohio, or in the State of West Virginia, and does no business in the said last named State or county. There is, however, located in the said city of Wheeling, an agent of what is known as the *Star Union Line*," which is an association of several railroads, formed and kept up for the purpose of facilitating the handling of certain freight business, in the city of Wheeling. The name of said agent is J. J. McCormick, and the only service which was had upon your petitioner, in said suits, brought before the said Phillips, justice as aforesaid, by the said Rogers, was had by serving cop-

ies of the orders of attachment issued in said cause, upon said J. J. McCormick. Your petitioner is advised that the said J. J. McCormick is not your petitioner's agent, and that the said service of the said copies upon him is not such a service as should or will bind your petitioner in the said cases, and that, therefore, the said Phillips, justice, as aforesaid, is without jurisdiction to render any decision, or enter any order, or judgment, against your petitioner in the said cases." The petition further shows that some of the employees against whom these actions were brought had instituted chancery suits in Pennsylvania, seeking to restrain the railroad company, by injunction, from paying the judgments recovered by Rogers in Ohio County, and a transcript of the record of one of said equity cases, showing all the proceedings therein and the opinion of the judge in the cause is filed as a part of the petition.

A rule was awarded against Rogers and Phillips, returnable on the 16th day of January, 1902, which, on said date, was continued until the first day of February, 1902, when there was a final hearing, and the court discharged the rule, dismissed the petition and gave costs against the petitioner, and the cause is now here on a writ of error to said judgment.

Attachment is no part of the general jurisdiction of any court. It is purely statutory, and though everywhere vested by statute in courts of general jurisdiction, it is still a special and limited power, resting upon its own peculiar grounds, acting in its own prescribed modes, and leading to its own specific results. Drake on Attach., sec. 83; Waples on Attach., secs. 635, 637. When jurisdiction by attachment is conferred upon, and exercised by courts of general jurisdiction, it is special, and unsupported by presumptions in its favor. Waples Att., sec. 639. The statutory prerequisites to attachment are jurisdictional. Waples Att., secs. 625, 627.

Attachment is in the nature of a proceeding *in rem.* There is an actual seizure of property, except where it is in the form of garnishment. In the case of garnishment, it retains its character as one in the nature of a proceeding *in rem,* althought there is no actual seizure of property under the order of attachment, for by service of the order upon the garnishee, it arrests the debt in his hands and holds it through him, subject to the judgment of the court. The claim subjected by garnish-

ment is estate of the principal debtor in the hands of the garnishee and the proceeding is against it as a *res*, a thing, and not against the garnishee personally, except to compel him to turn it over to the creditor of the principal defendant in satisfaction of his claim. In every practical sense, it amounts to a seizure of a thing. "Garnishment is in the nature of a proceeding *in rem*, since its aim is to invest the plaintiff with the right and power to appropriate, to the satisfaction of his claim against the defendant, property of the defendant's in the garnishee's hands, or a debt due from the garnishee to the defendant." Drake on Attach., sec. 452; Wade on Attach., sec. 338. Without such seizure, no jurisdiction over the *res* is acquired and no judgment against it can be rendered, although the court may have jurisdiction of the parties. Garnishment is no exception to this rule, as will be shown. Jurisdiction of the person of the garnishee must be acquired by service upon him, but this does not necessarily give jurisdiction of the *res* or debt owing by him, which belongs to the defendant, whose right to it must be extinguished by bringing it within the jurisdiction of the court by proper proceedings and subjecting it to the satisfaction of the plaintiff's demand by a proper judgment.

Just here it is to be further observed that courts have no extra territorial jurisdiction over either persons or property in attachment suits. To maintain a proceeding, there must be jurisdiction over the one or the other or both. Waples on Attach., sec. 644. "Jurisdiction over persons and property, in any state, is confined to the persons and property within the territorial bounds of the State. No court within it can exercise jurisdiction beyond it. To exercise it over persons or property in another state would be an unwarrantable assumption and arrogation of unlawful authority, entitled to no respect on the principle of comity, but meriting rebuke and resistance as a wanton abuse of power. A judgment rendered in any state against a person or property over which the court has no jurisdiction is not entitled to 'full faith and credit' in other states, but its validity may be questioned on jurisdictional grounds, and its enforcement resisted; for, not being by due process of law, it is entitled to no regard, even in the state where it is rendered; and it may be impeached collaterally anywhere." Waples on

Attach., sec. 648. In other words, such action is absolutely null and void for want of jurisdiction.

In exact alignment with this general proposition of law which is not questioned anywhere, it has been held by the courts of this country, with practical unanimity, that a non-resident cannot be subjected to the process of garnishment, although ·caught within the State temporarily and served with process. The moment that it is made to appear to the court that he is a non-resident, only temporarily within the State, without property or effects of the defendant in his possession in the State, or owing him a debt payable within the State, the jurisdiction of the court ends. "In this country, the question has been repeatedly presented, and the uniform tenor of the adjudication establishes the doctrine, that whether the defendant reside or not in the State in which the attachment is obtained, a non-resident cannot be subjected to garnishment there, unless, when garnished, he have in the State property of the defendant in his hands, or be bound to pay the defendant money, or to deliver to him goods, at some particular place in that State." Drake on Attach., sec. 474; Wade on Attach., sec. 413; Waples on Attach., secs. 387, 392.

It is said that the first announcement of this doctrine in this country was made by the Supreme Judicial Court of Massachusetts. In that State, the proceeding is called trustee process and the garnishee here would there be called the trustee. The reason given for holding that a non-resident cannot be subjected to garnishment is stated in *Tingley* v. *Bateman,* 10 Mass. 350, 352, as follows: "The summoning of a trustee is like a process *in rem.* A chose in action is thereby arrested, and made to answer the debt of the principal. The person entitled by the contract or duty of the supposed trustee, is thus summoned by this species of effects. These are, however, to be considered for this purpose as local, and as remaining at the residence of the debtor or person entrusted for the principal; and his rights, in this respect, are not to be considered as following the person of the debtor, to any place where he may be transiently found; to be taken there at the will of a third person, within a jurisdiction where neither the original creditor nor debtor reside." It is further stated in said opinion in the process of foreign attachment, by the custom of London, out of which our

system of attachment law originated and from which it differs
to no considerable extent, the garnishee must be suggested to be
a man within the city.   Proceeding, the court says, "The prin-
cipal has not been made a party by any legal summons; and he
may justly object to the transfer of his demands against Dag-
gett, attempted to be made in this case by Daggett's conclusive
( ?) or transient removal within the process of this Court; that
the credits or effects in his hands belonging to Bateman have
never been legally attached; and that the summoning of Dag-
gett was to no purpose a sufficient service of this writ.   And
as this defect of service appears in the proceedings, the court
dismiss the action *ex officio.*"   The same principle is announced
in all the following cases:   *Nye* v. *Lipscomb,* 21 Pick. 263; *Hart*
v. *Anthony,* 15 Pick. 445; *Lovejoy* v. *Albree,* 33 Me. 414; *Law-
rence* v. *Smith,* 45 N. H. 533; *Baxter* v. *Vincent,* 6 Vt. 614;
*Green* v. *Bank,* 25 Conn. 452; *Ray* v. *Underwood,* 3 Pick. 302;
*Cronin* v. *Foster,* 13 R. I. 196; *Smith* v. *Eaton,* 36 Me. 307;
*Jones* v. *Winchester,* 6 N. H. 497; *Sawyer* v. *Thompson,* 24 N.
II. 510; *Young* v. *Ross,* 31 N. H. 201; *Peck* v. *Barnham,* 24 Vt.
75; *Ringe* v. *Green,* 52 Vt. 204; *Squair* v. *Shea,* 26 O. St. 645;
*Peters* v. *Rogers,* 5 Mason (U. S.) 555.

In 14 Am. & Eng. Enc. Law (2d ed.), 815, it is said: "Under
statutes providing generally for summoning, as garnishee, per-
sons indebted to the defendant, or having in their possession
property belonging to him, it has been held that non-residents
were exempt from liability to be so summoned though found
temporarily within the State, and in some jurisdictions the
statutes have expressly provided that only residents of the State
shall be so summoned.   On the other hand, there are statutes
which expressly provide that non-residents may be summoned
as garnishees, and by the weight of authority it seems that the
mere fact that a person is a non-resident does not exempt him
from liability to be so summoned when the question is not af-
fected by the *situs* of the *res* sought to be reached by the process."
A hasty reading of this might lead one to say that it is in con-
flict with the general proposition heretofore announced, but it
is not.   The distinction between summoning the garnishee, by
which jurisdiction over his person is acquired, and the obtain-
ing of jurisdiction of the *res,* the claim sought to be subjected
must be observed.   If a non-resident be found temporarily within

the State, he may undoubtedly be summoned and must appear and answer. But when it is shown by his answer that he is a non-resident, having no property of the defendant in his possession within the State, nor owing him any debt payable within the State, nor bound by any contract to deliver any property to him within the State, the want of jurisdiction of the *res* appears, and, when established, the proceeding must end, although there is jurisdiction of the person of the garnishee. "When one is summoned as garnishee in a State of which he is not a resident, it is necessary, for his own protection, that he should answer to the proceeding and avail himself of whatever defense he has against liability; or he will be liable to a judgment by default against him, if the law under which he was summoned authorizes that course of proceeding; for by the service of process, the court acquires jurisdiction over his person, and the question whether it has, or can take, jurisdiction of the effects in his hands, can only be raised by himself upon his answer." Drake on Attach., sec. 476. It is to be observed that in the quotation from 14 Am. & Eng. Enc. Law (2d ed.), it is said the non-resident is liable to be summoned "when the question is not affected by the *situs* of the *res* sought to be reached by the process."

But two cases have been found which completely ignore the principle that a non-resident cannot be held as garnishee, when it is shown that he is a non-resident and has no effects of the debtor in his possession within the State and owes him no debt payable within the State. They are *Molyneux* v. *Seymour,* 30 Ga. 440, (76 Am. Dec. 662), and *Morgan* v. *Neville,* 74 Pa. St. 52. Both of these cases not only ignore that proposition but fail to distinguish attachment, which is a special limited statutory proceeding, from proceedings in which the courts exercise general jurisdiction, and in which strict compliance with the requirements in matters of procedure is not ordinarily jurisdictional, as we have seen that it is in attachment and garnishment. Where the action is *in personam,* jurisdiction of the person of the defendant is plenary jurisdiction, giving the court full power for all purposes of the action. But in garnishment, as we have seen, jurisdiction of the person of the garnishee is only partial jurisdiction. It is generally so held. No attention whatever was paid to this distinction in two cases named. The Pennsylvania

decision is vigorously condemned by Mr. Thompson in his Commentaries on the law of Corporations. See Vol 7, sec. 8073, note 4, pp. 6432 and 6433. In 14 Am. & Eng. Enc. Law, (2d ed.), 805, the following is found: "The rule announced in a number of late and well considered cases, and which seems to be the doctrine which will best protect the interest of commerce, is that a debtor may be charged as garnishee of his creditor without regard to the illusive theories as to the *situs* of a debt, in any jurisdiction in which an action could have been brought by such creditor against the debtor for the recovery of the debt, though personal service cannot be had upon the defendant." For this proposition, several cases are cited. But these cases do not repudiate, overturn, nor say anything in conflict with the proposition that a non-resident cannot be subjected to garnishment, unless he has effects of the debtor within the State or owes any debt payable within the State, or has contracted to deliver to him property within the State. Most of them are cases against foreign corporations, doing business within the State and which have in some sense, become domestic corporations by having complied with the statute of the State and voluntarily made themselves subject to its process, just as if they were domestic corporations. Such is *Mooney* v. *Buford*, 72 Fed. Rep. 32. In *Pomeroy* v. *Rand, McNally & Co.*, 157 Ill. 176, the garnishee was a resident of the State. In *Mooney* v. *Railroad Co.*, 60 Ia. 146, the garnishee railroad company operated its railroad within the State and was held to be a citizen of the State. In *Bank* v. *Insurance Co.*, 83 Ia. 491, the garnishee insurance company was held to be doing business within the State and the case was assimilated to the *Mooney Case* and the decision based upon the same principle. In *Railroad Co.* v. *Thompson*, 31 Kan. 180, the garnishee railroad company had leased property and was doing business within the State. In *Sharitt* v. *Railroad Co.*, 43 Kan. 375, the railroad company did business and operated its road in both of the States between the courts of which the conflict occurred, and the question was not one of jurisdiction on the ground involved here, but the enforcement of the exemption laws of a foreign State in the garnishment proceeding. In *Harvey* v. *Railroad Co.*, 50 Minn. 405, involving the validity of a garnishment made in Montana, it was found and held that the railroad company operated its railroad in the State of Mon-

tana. In *Hardware Co.* v. *Sang,* 127 Mo. 242, the garnishees were residents of the State. In *Insurance Co.* v. *Chambers,* 53 N. J. Eq. 468, the garnishee insurance company was held ·to be doing business within the State in which it was garnished. In *Railroad Co.* v. *Barnhill,* 91 Tenn. 395, the garnishee railroad company was ·held to be a domestic corporation of the State. It is also insisted in the brief that *Railroad Co.* v. *Sturm,* 174 U. S. 710, at least countenances the proposition that· a nonresident temporarily within the State may be subjected to garnishment. It certainly does not so decide. Mr. Justice McKenna says: "We are not concerned to inquire whether the cases which decide that a debtor temporarily in a State cannot be garnished there, are or are not justified by principle." At another place, he says, of the locality of the debt, "But we do not think it necessary to resort to the idea at all or to give it· important distinction." On the contrary, the following language from him strongly indicates that, at least the domicile of the garnishee, determines the jurisdiction of the debt sought to be subjected: "The essential service of foreign attachment laws is to reach and arrest the payment of what is due and might b̀e paid to a non-resident to the defeat of his creditors. To do this, he must go to the domicil of his debter and can only do it under the laws and procedure in force there. This is a legal necessity, and considerations of *situs* are somewhat artificial. If not artificial, whatever of substance there is must be with the debtor. He and he only has something in his hands. That something is the *res,* and gives character to the action as one in the nature of a proceeding *in rem."* By the word debtor here he means the garnishee, the man owing the debt sought to be subjected by attachment. He quotes from the opinion in *Andrews* v. *Clarke,* 1 Carth. 25, passing upon the law of attachment under the custom of London, where it is said, "For it was always the custom ín London to attach debts upon bills of exchange, and goldsmith's notes, etc., if the goldsmith who gave the note on the person to whom the bill is directed, liveth within the city without any respect had to the ·place where the debt was contracted." In that case, a prohibition was denied which had been asked upon the grounds that the cause of action did not arise in London, but was made in the county of Middlesex. What Mr. Justice McKenna was disposing of as fallacious and

unsound was the proposition advanced by a Kansas judge, that the *situs* of the debt is with the man to whom it is due and not with the man who owes it. He not only abstains from questioning the soundness of the decisions holding that a debtor temporarily in a State cannot be garnished, but he shows also that the case he was considering was within that principle for he says, "There is no fact of change of domicil in the case. The plaintiff in error was not temporarily in Iowa. It was an Iowa corporation and a resident of the State, and was such at the time the debt sued on was contracted." This opinion does not militate against the principle so generally recognized, but rather upholds it.

This question seems never to have been raised nor passed upon in this State. But two cases, not like, but, in some respects, similar to this, have been decided. *Mahany* v. *Kephart,* 15 W. Va. 609, and *Stevens* v. *Brown,* 20 W. Va. 450. By reference to them it will be seen that in each the B. & O. Railroad Company was proceeded against as garnishee and debtor of a non-resident person, and that the jurisdiction was sustained upon the ground that said railroad company maintained and operated its road in the State of West Virginia and it was pointed out in the opinion that it had been held in *Hart* v. *Railroad Co.,* 6 W. Va. 336, that the acts of the legislature had conferred corporate powers and privileges upon said railroad company, and that said railroad company is an incorporated railroad company within the boundaries of this State, and that the court would take judicial notice of the fact. It is thus seen that it was found and expressly determined, in order to uphold the jurisdiction of the court, that the railroad company was within the State of West Virginia, and subject to its process. While it is not said that it was domiciled in this State, somewhat stronger language was used, importing that it was substantially a domestic corporation. In *Mahany* v. *Kephart,* the following is quoted from Drake on Attach., sec. 479: "Where, as is sometimes the case, a corporation is chartered by two or more States, it is not in any of those States a foreign corporation, and may be subjected to garnishment in any of them, though its office and place of business be not in the State in which the garnishment takes place." The other case, *Stevens* v. *Brown,* was disposed of, and the jurisdiction sustained, upon the same grounds. As tending

to uphold their position, counsel for defendants in error quote the following from the opinion in *Beirne* v. *Rosser*, 26 Grat. 538, which was quoted also in *Mahany* v. *Kephart:* "All actions are either local or transitory. Real actions are local and personal actions are transitory. This is a personal action, being for the recovery of damages for the breach of a contract, and is therefore a transitory action. It is a general principle of the common law, that a transitory action can be brought against a party wherever he may be found, and served with process; no matter where he may reside, or where the execution may have arisen." This has no shadow of application. It was quoted to uphold the action of the court in giving a personal judgment against Kephart, a non-resident who had appeared to the action, being the defendant, not the garnishee, in the action.

The principle which forbids garnishment of a non-resident individual temporarily in the State, applies to foreign corporations. Unless doing business within the State, they are not subject to garnishment therein. This is the only extent to which the rule is relaxed in such cases. "Owing to the growth of corporations and the transaction of their business in jurisdictions other than those in which they were incorporated, there are statutes in practically all jurisdictions which authorize the service of process upon certain officers or agents of foreign corporations, and a foreign corporation transacting business in a jurisdiction in which such statutes exist, impliedly submits itself to the jurisdiction of the courts therein, and may be summoned as garnishee, if corporations and non-resident individuals are liable to be so summoned." 14 Am. & Eng. Enc. Law, (2d ed.), 816. Observe that this rule says they may be summoned. It does not say that, by summoning them, under such circumstances, jurisdiction of the *res* is obtained. It is not enough in such cases to confer such jurisdiction that jurisdiction of the person of the garnishee may be obtained, any more than in the case of an individual. "A corporation frequently does business at the same time in several different States, and it is liable to garnishment in any one of them where it has an officer upon whom process may be legally served, if it has property of the defendant there. If a corporation is chartered in different States, it has corporate existence in each, as a matter of course, and may be treated in each as a resident. But if not

thus chartered so as to be, in contemplation of law, a resident
of the State, it comes under the rule governing natural per-
sons." Waples on Attach., sec. 391. In this statement,
Waples appears to be fully sustained by the numerous cases
cited in support of the text from the Am. & Eng. Enc. Law,
last above quoted. In most of these cases it appears that the
foreign corporations garnished had places of business where
they transacted their corporate business with agents in charge
of it as their own business. In some they were railroad com-
panies, operating lines through the State under legislative per-
mission and subjected by legislation to the liabilities of domes-
tic corporations. In some, the statutes expressly made foreign
corporations liable to garnishment. Generally they uphold the
proposition quoted from Waples.

The garnishee sought to be held by the justice in this State,
admitted in its answer that it owed the defendant $24.00. As
it was bound to answer fully, if at all, and make a full dis-
closure of all the estate of defendant in its hands, and this
answer was not controverted or excepted to, the answer amounts
to a denial that the railroad company had anything in its
hands except said sum of money, and substantially denied
that the sum was payable in the State of West Virginia. By
the same answer it averred that it was a citizen of the State
of Pennsylvania, that Snyder was a citizen of said State, and
that said sum was due for wages earned in Pennsylvania under
a contract made in Pennsylvania. Being uncontroverted, the
answer must be taken as true as to all these matters. It nega-
tives any liability to the defendant in West Virginia, either
for money or on account of property, and also the jurisdiction
of the court because of the non-residency of the garnishee.
The uncontroverted averment that the money was due on ac-
count of wages earned in Pennsylvania under a contract there
made, gives rise to the legal presumption that it is payable in
Pennsylvania. *Hefflebower* v. *Detrick*, 27 W. Va. 16. That
negatives, any mere presumption of money agreed to be paid
to Snyder in this State. The petition admits, however, that
the railroad company had some connection with the *"Star
Union Line"* of which McCormick was agent, but denies that
the railroad company itself was doing business in the State.
The existence of this *"Star Union Line"* and its operations in

the county of Ohio is the only ground for saying that the Pennsylvania Railroad Company does business in the State. This seems to be fully admitted. It is not contended that the railroad company has complied with the statutory requirements, giving to foreign corporations the rights, and subjecting them to the liabilities, of domestic corporations. So it must be determined whether its connection with the *"Star Union Line"* amounts to a doing business within the State so as to make it liable to garnishment. The *"Star Union Line"* is a sort of joint traffic arrangement maintained by several railroads to facilitate the handling and forwarding of freight. One of these is the garnishee company. It appoints the president of the *"Star Union Line"* and he appointed McCormick, the agent in charge, and it is said McCormick solicits freight for the Pennsylvania Railroad Company. The garnishee company contributes to the expenses and maintenance of this arrangement and, in that way, to the payment of the agent for his services. It does not amount to a doing business within the State within the meaning of the law of garnishment. The Pennsylvania Railroad Company has not, in any sense, made itself a West Virginia corporation by contributing to the maintenance. of this joint traffic arrangement, although it may, in some sense, a limited sense, amount to a doing business within the State. It could not be regarded as being within the State otherwise than transiently. It operates no lines here, runs no cars here, and performs none of its business as a common carrier within the State. Whether it would amount to doing business within the meaning of the statute prohibiting a foreign corporation from doing business without complying with certain regulations is not the test. To do business within the meaning of the law of garnishment, it must bring itself within the State in some substantial way. It is not enough, as has been said, that process may be served upon it. That only gives jurisdiction *in personam,* not necessarily jurisdiction of the claim sought to be reached in its hands. This view is undoubtedly supported by the great weight of authority. In some States, non-residents are, by statute, expressly made liable to the process of garnishment, and many cases are to be found in which the decisions are based upon these statutes. Where they do not exist, the foreign corporation held as gar-

nishee, is held to be within the State in the transaction of its ordinary corporate business, and that holding is based in the cases of railroads, in almost every instance, upon the operation of a line of railroad within the State, and not merely upon the presence of an agent, whose business it is to solicit freight or to manage a joint traffic arrangement which is handled over the line of some other railroad within the State. Thomp. Com. Cor., Vol. 7, secs. 8069-8073, fully supports this decision. For a full discussion of the subject and a conclusion in exact accord with ours, see Freeman on Executions, sec. 161a.

The justice was without jurisdiction for another reason. The return of service of the order of attachment is clearly insufficient. It does not show that McCormick, the agent, resided in the county of Ohio. The service was evidently made under section 35 of chapter 50 of the Code. Section 38 of the same chapter provides that service, under any of the preceding four sections, shall be made in the county in which the person served resides and that the return must show that he resides in the county. It says further that, if the return does not show this, the service shall not be valid. In *Taylor* v. *Railroad Co.*, 35 W. Va. 328, it has been decided that a judgment based on a return of service not showing that fact, is void, there having been no appearance. To the same effect is *Frazier* v. *Railroad Co.*, 40 W. Va. 224; and the doctrine is approved in *Hopkins* v. *Railroad Co.*, 42 W. Va. 535, and *Ry. Co* v. *Wright,* 653.

This defect of service would be cured by an appearance in an action *in personam,* and especially in a justice's court, for section 33 of chapter 50 of the Code provides that an appearance by the defendant is equivalent to personal service. But it does not show that an appearance by a garnishee shall be equivalent to personal service, and to construe it to mean that would do violence to the spirit of the law of garnishment. Nor does the statute anywhere provide that a garnishee may confer jurisdiction by his appearance without service of process. Section 197, relating to that subject, requires the delivery of a copy of the order of attachment to the person designated by the plaintiff as garnishee, and there is no provision for his appearance until after that is done. Why is this? The garnishee is a stakeholder and must be impartial. He cannot voluntarily place his creditor's debt within the jurisdiction of a

court to the end that it may be taken by some other person. The debt must be arrested and detained in his hands by the service of process, and that must be a sufficient service to hold it. "Garnishment rests wholly upon judicial process, and depends upon the due pursuit of the steps prescribed by law for its prosecution. It can borrow no aid from volunteered acts of the garnishee. Such acts will be regarded as void, so far as they interfere with the rights of third parties. Thus, where, under a law requiring the garnishment process to be personally served on the garnishee, it was held, that he had no right to do so, and that the acceptance or waiver of service was a nullity, as against other attaching creditors; and equally so as against an assignee of the debt in respect of which the garnishee was charged. So, where the statute prescribed that process should be served on a corporation by service on the president, or any director or manager thereof, an admission of service of garnishment by the attorney of a corporation was held insufficient to give the court jurisdiction of the corporation. So, where no legal service of process had been made on a corporation as garnishee, and yet the secretary of the corporation appeared and answered, and made no objection to the sufficiency of the service; it was held that no judgment could be rendered against the corporation. So, where a garnishment was made after the return day of the writ, and the garnishee appeared and answered, and judgment was rendered against him; it was decided, that the process under which he was summoned had no validity; and that he therefore stood as though he had voluntarily appeared and answered interrogatories without notice; and the judgment against him was set aside as against other creditors." Drake on Attach., sec. 451*b*. "The garnishee, in the eyes of the law, is a mere stakeholder, a custodian of the property attached in his hands; he has no pecuniary interest in the matter; he has no cost to pay, and therefore none to save; his business is to let the law take its course between the litigants; he has no right to accept or waive service of the proceeding, thereby favoring one party at the expense and injury of another, and creating actually a privilege with priority in favor of one creditor to the prejudice of another." 18 La. Annual, 476. To the same effect see Wade

on Attach., sec. 336. It is to be remembered that there has been no service of process on the defendant.

The whole case rests upon the sufficiency of the proceeding against the garnishee, to arrest in its hands the right of the defendant to the debt sought to be subjected. In such case, the court's jurisdiction depends upon something having been seized. Without it, no suit can be maintained against the garnishee. The case is quite different from one in which the defendant has been served or has appeared, and is in a position to take his own exceptions to the proceedings on the ground of insufficiency. Waples on Attach., sec. 474. "The return of the writ must state all of the facts that are essential to a valid service thereof. It must be certain, and must show that the property was attached in the hands of the garnishee, or the court acquires no jurisdiction over the *res*. The return should also state on whom the writ was served, and the time when service was made. It must recite the performance of those acts required by the statue as conditions precedent to a valid service in garnishment." 9 Enc. Pl. & Pr., 827, 828. "In order that the defendant may be concluded by the proceedings, it has been held necessary that there should have been a proper service of process on the garnishee. The latter has no power to affect the rights of the defendant by voluntarily appearing as garnishee, and if he does voluntarily appear, the proceedings will afford no protection to him against subsequent liability to the defendant." 14 Am. & Eng. Enc. Law, (2 ed.,) 885.

Counsel for defendant in error insist that jurisdiction is admitted by the plaintiff in error in its petition for the writ of prohibition. As before stated, that petition shows that employees of the company have instituted suits in equity in Pennsylvania to enjoin the petitioner from paying over their wages in satisfaction of the judgments rendered by Phillips in Ohio County, West Virginia. In the petition is incorporated the record of one of these chancery causes, namely, *O. C. Galbraith* v. *R. M. Rutter*, and the petitioner. The answer of the railroad company in that suit set up the Ohio County judgment against Galbraith and insisted upon its validity as a defense in the equity suit, and averred that the claim of Rutter was assigned to Rogers, that the attachment was issued by

Phillips, "justice of the peace of Washington District, Ohio County, West Virginia, a competent tribunal under the laws of the State of West Virginia, having jurisdiction of the subject matter; and that the summons was duly served, and the attachment was duly served on an agent of the defendant, garnishee, and that the proceedings affecting such jurisdiction are regular." The Pennsylvania court record further shows that evidence was taken to sustain the allegations of the answer, and that the court found against the railroad company as to several matters of fact, and that the railroad company excepted to the findings of the court, in not holding that McCormick was in its employ; that he was district freight solicitor whose principal duty it was to solicit freight for the defendant; that the Union Line was the through freight business of the defendant and a bureau of the defendant for conducting its through freight business; that McCormick had an office in Wheeling, West Virginia, as freight solicitor of the Pennsylvania Railroad Company; and that the Pennsylvania Railroad Company had no other office in Wheeling." This cannot amount to an estoppel. "The pleadings of a party in one suit may be used in evidence against him in another; not as an estoppel, but as proof, open to rebuttal and explanation, that he admitted certain facts. But in order to bring such admissions home to him, the pleadings must be either signed by him or it must appear that it was within the scope of the attorney's authority to admit such facts." *Buzzard* v. *McAnully,* 77 Tex. 438; *Perry* v. *Simpson,* 40 Conn. 313; *Tabb* v. *Cabell,* 17 Grat. 160. It does not preclude or estop the petitioner on the ground of having taken an inconsistent position in judicial proceedings for the reason that it does not appear to have obtained any advantage from it or injured the other party to this suit. Taken altogether, as a part of the petition, it only shows that the petitioner set up the Ohio County judgment as a defense in the Pennsylvania court; and that that court refused to find from the evidence offered in support of the answer certain facts, which, if found, as contended for by the railroad company, fall far short of establishing that said company is within the State of West Virginia in such sense as to make a debt due from it to a non-resident subject to condemnation by garnishment in the courts of this State. It is

said that the agency of McCormick is admitted. Suppose it is. He is an agent with an office in the city of Wheeling, whose business it is, not to operate a railroad in this State, nor to transact the ordinary business of the Pennsylvania Railroad Company here, but to solicit freight for it. The answer does not admit that the railroad company is a West Virginia corporation or is doing business within the State as a foreign corporation, nor that the debt due from it is liable to garnishment in this State. True, it says that the justice's court is a competent tribunal, having jurisdiction of the subject matter. That is a conclusion of law rather than an admission of fact. It also says the proceedings affecting jurisdiction are regular. That, too, is largely a conclusion of law. Treating these admissions as evidence on the questions of fact set up in the petition, eliminating from them the matters of law included, they do not overthrow the averments of the petition that the railroad company, and especially the debts, due from it, are not subject to garnishment in this State, as insisted upon in its answer filed in the justice's court. The pleadings in the Pennsylvania equity cause are entitled to but little consideration here as admissions. Speaking of judicial admissions, made in pleadings, 1 Am. & Eng. Enc. Law, (2d ed.), 720, says, "They are admissible in behalf of either the adverse party or a stranger provided they were sworn to by the client personally, or were drawn under his special instructions." The answer was filed by attorneys and sworn to by one of them, and there is nothing to show that it was prepared under instructions from anybody having authority to bind the railroad company generally. On the same page of the same book, in a note, it is said, "In *Boileau* v. *Rutlin,* 2 Exch. 665, it was held that pleadings in equity, as well as at common law, are not to be treated as positive allegations of the truth of the facts therein, for all purposes, but only as statements of the case of the party, to be admitted or denied by the opposite side, and, if denied, to be proved and ultimately submitted for judicial decision." This is peculiarly applicable here where it clearly appears that the railroad company against whom it is attempted to maintain this admission, is struggling to protect itself against double liability for a great number of claims, asserted against it in the courts of two different States. The record

in the case relied upon was not made between the parties to the case in which the transcript of the docket of the justice is filed with the petition, the only one that can be considered here. Hence, it is not the same suit, nor between the same parties, and, for that reason, is entitled to less weight than it would otherwise be entitled to. 1 Am. & Eng. Enc. Law, (2d ed.), 719, 720.

As the justice was without jurisdiction of the *res,* the real subject matter, for two reasons, first, that the service of the process was invalid, and not cured by appearance, although appearance was made, and, second, because the subject matter itself is not in the State, nor subject to the process of its courts, the writ of prohibition prayed for ought to have been awarded by the court below. But it is insisted that, although jurisdiction was not acquired, the justice had the power to consider whether he had jurisdiction and to decide the question of jurisdiction, and that, if he did decide that he had jurisdiction, when in truth he had not, his action in so holding was not without jurisdiction nor an act in excess of jurisdiction, but simply an error to be corrected on appeal, and not an act without jurisdiction or in excess thereof, subjecting the court and the parties to the writ of prohibition. For this, *Sperry* v. *Saunders,* 50 W. Va. 70, (40 S. E. R. 449), and *Howland* v. *Railway Co.,* 134 Mo. 479, are relied upon. The *Sperry Case* is not applicable. It only holds that a court has jurisdiction to determine whether a judgment is valid or invalid. That is purely an exercise of jurisdiction, the parties being before the court and the validity of the judgment being brought into the court upon the proper pleadings. The *Howland Case* does not sustain the contention for it asserts that jurisdiction must be obtained, that is, power to hear and determine. It must have jurisdiction, not only of the person, but of the *res,* after which what is done by the court is merely the exercise of jurisdiction. Works on Courts and Jurisdiction, at page 634, says, "Prohibition will lie to prevent action where the court has not jurisdiction of the person as well as in cases where there is an absence of jurisdiction of the subject matter." It must have jurisdiction of the subject matter. 16 Am. & Eng. Enc. Pl. & Pr., 1094, 1110. Writ lies for excess of territorial jurisdiction. *Idem,* 1120. It is necessary for the defendant, as a gen-

eral rule, to plead and show want of jurisdiction before apply-
ing for a prohibition. But omission to do this does not pre-
vent its issuance, when the declaration shows that the cause of
action did not arise *infra jurisdictionem,* or that its subject
matter is not proper for the judgment and determination of
the court, or if the defendant was prevented by artifice, etc.,
from pleading want of jurisdiction. Bacon. Abr., Vol. 8, p.
232, (Ed. 1852). The answer of the garnishee, setting up its
non-residence, was not controverted so far as the record shows
and must be taken as true. That establishes a want of juris-
diction, by showing that the subject matter is beyond the terri-
torial jurisdiction of the court. It is an utter want of jurisdic-
tion, in defiance of which the justice went on and gave judg-
ment. Had the subject matter been within the territorial ju-
risdiction of the court, jurisdiction of it was not obtained
because there was no service upon the garnishee. What pur-
ports to be the return of service, being void under the statute
and decisions of this Court, it could not confer any jurisdic-
tion of the subject matter, although the garnishee appeared
and subjected itself to the jurisdiction of the court. Where
the court has jurisdiction of the subject matter and the ques-
tion of its jurisdiction of the person turns upon some fact to
be determined by the court, its decision that it has jurisdic-
tion, if wrong, is an error, and prohibition is not the proper
remedy. Works on Courts and Jurisdiction, 634. But that is
not the status of these matters. The return of service, as has
been shown, is void on its face, and gives no jurisdiction of
the subject matter, even if the subject matter were within the
territorial jurisdiction of the court. It is not a mere irregu-
larity. It is a statutory requisite of the return for omission of
which the statute says, not that the return is defective, insuf-
ficient, or invalid, but that "the service shall not be valid."

It is also objected that the prayer of the petition is defective,
because too general. The substance of it has been given in
the statement of the case. It seeks the writ as to all of the
numerous cases mentioned in the list filed as an exhibit with
the petition. It can only go of course, if at all, as to the one
case, the record of which is exhibited, namely, that of *Rogers*
v. *Snyder* and the railroad company. This Court cannot pre-
sume that certain things appear, and certain defenses were

made, in the other cases. They must be shown. After setting up and showing what has been done generally in these cases, including the particular case, the record of which is exhibited, it prays that Phillips and Rogers may be prohibited from proceeding in their said acts and proceedings. This, of course, embraces that particular case, although it is not specifically named in the prayer. The petition alleges that, in doing the acts complained of, the justice has acted without any judisdiction and that, if not restrained, he will continue his unauthorized proceedings. Although general, and somewhat indefinite in its terms, the petition and prayers are, in substance and effect, sufficiently certain.

It is insisted that the decisions in the cases of *Mahany* v. *Kephart* and *Stevens* v. *Brown*, to which reference has been made, ought to be re-examined and overruled in so far as they hold that the exemption laws of a foreign State have no extraterritorial force or virtue and will not be enforced by the courts of this State. As tested by the great weight of American authority, these two decisions are right and no good reason is presented why they should be overruled.

The court below sustained a motion to quash the rule and dismiss the petition, for insufficiency of cause shown for the issuance of the writ. The judgment, therefore, stands as one upon demurrer. It must be reversed, for the reasons shown, but judgment cannot now be entered, awarding the writ of prohibition. It is only held that the petition is sufficient and that the court below erred in not so holding, and in quashing the rule and dismissing the petition. Hence, an order will be entered reversing the judgment and, remanding the case to the circuit court of Ohio County for further proceedings in accordance with the principles here announced and further according to law.

*Reversed and Remanded.*