# CHARLESTON

BALTIMORE & OHIO RAILROAD COMPANY *v.* ALLEN.

Submitted June 10, 1905.    Decided November 28, 1905.

1. GARNISHMENT—*Foreign Railroad Corporations.*
   Railroad corporations, chartered by other states, but owning and operating railroads in this State, have the status of residents of this State, although they are not citizens of it, within the meaning of clause 1 of section 2, Art. III, and clause 1 of section 2, Art. IV, of the Constitution of the United States, nor domiciled in this State in the technical sense of that term.    (p. 398.)

2. GARNISHMENT—*Foreign Railroad Corporations—Situs of Debt.*
   Such corporations may be proceeded against as garnishees, without reference to the jurisdiction in which debts due from them were contracted or are payable.    (p. 399.)

3. GARNISHMENT—*Debt follows Person of Debtor.*
   For the purposes of garnishment, a debt is annexed to the person of the debtor and subject to garnishment wherever he is found, unless expressly made payable elsewhere.    (p. 400.)

4.  GARNISHMENT—*Venue.*

    A debt may be attached by garnishment at the place of residence of the debtor, although it be expressly made payable elsewhere. (p. 396.)

Error to Circuit Court, Ohio County.

Application by the Baltimore & Ohio Railroad Company for writ of prohibition against James Allen, justice, and others.   From an order denying the writ, plaintiff brings error.

*Affirmed.*

ROBERT WHITE, J. B. SOMERVILLE, and D. C. WESTEN-HAVER, for plaintiff in error.

CALDWELL & CADDWELL, for defendants in error.

POFFENBARGER, JUDGE:

Upon a writ of error to a judgment, discharging a rule in prohibition and dismissing plaintiff's petition, the inquiry is whether a justice of the peace has jurisdiction to proceed with an attachment against a railroad company, chartered by the legislature of Maryland and permitted by an act of the legislature of Virginia, before the division of the State, to build and operate its railroad through what is now West Virginia, as garnishee, for the subjection of a debt contracted by the same railroad company in the state of Pennsylvania, and payable there, to the satisfaction of a demand due from the creditor of said company to a third party, such creditor being a non-resident and not having appeared in the action. The supposed lack of jurisdiction is predicated upon two grounds: First.   That the *situs* of the debt sought to be subjected is in the state of Pennsylvania, where the creditor resides, where it was contracted and where it is payable. Second.   That though the *situs* of the debt be not in the state of the residence of the creditor, it is not in this State, because the garnishee is domiciled in another state and found here only temporarily.

H. F. Putnam, an employee of the Baltimore and Ohio Railroad Company on part of its line in Pennsylvania, to whom said company was indebted for services, was himself indebted to J. D. Miller and Son, also residents of Pennsylvania.   Miller & Son assigned their claim against Putnam to W. W. Rogers of Wheeling, who

brought an action on it before Allen, justice of the peace of Ohio county, making the railroad company a garnishee. Thereupon the company presented its petition for a writ of prohibition to a judge of the circuit court of that county, who, after awarding a rule, discharged it on motion and dismissed the petition. The petition alleged, in addition to the facts already stated, that the debt due Putnam was contracted and payable in Pennsylvania.

Great conflict and confusion characterize the decisions of the courts of the several states, respecting the right to proceed by garnishment against debts due from corporations to non-residents and made payable in a foreign jurisdiction. Many of them rest their decisions on the theory that the debt follows the person of the creditor and can be subjected only in the jurisdiction in which he resides. Others take the opposite view, saying it follows the person of a debtor and belongs to the jurisdiction of his residence. Still others give the idea of *situs* no peculiar force, holding that it may be subjected wherever the debtor may be sued. The adherents to the first proposition defend it upon the ground, that the ownership of the debt is of necessity in the creditor, for no man can have property in a debt that he owes to another.

Thus, in *National Bank* v. *Furtick*, 2 Marvel (Del.) 35, 69 Am. St. Rep. 99, the court says: "This inquiry could present no difficulty in respect to real estate, and little or none in regard to tangible personal property, having an actual *situs*. But for the purpose of jurisdiction, the *situs* of a debt or chose in action is a question upon which there has been some diversity of opinion. There is, of course, no actual or visible, but only constructive, *situs*. Does the debt follow the creditor and his domcile, or the debtor and his domicile? The legal right and title are clearly in the creditor, and, by analogy to the principle that constructive possession is with the rightful owner, we should expect that the chose in action, particularly a debt, follows the person of the creditor for the purpose of attachment, as well as for many other purposes. And such seems to us to be the law, especially where there is no stipulation to the contrary."

In his very able note to this case, in 69 Am. St. Rep.,

Mr. Freeman says, at page 117: "By the great weight of reason and authority debts are considered as the property of the persons to whom they are due, and their *situs* to be at the domicile of the creditor for the purpose of garnishment, as for all other purposes."

Mr. Freeman does not mean to say, however, that the decisions in all the cases cited for the foregoing proposition were controlled by it. It is merely stated as a sort of basic principle which has been modified in several ways. In the next subdivision of his note, page 118, he says many of the leading cases cited hold that the rule has been dispensed with by statutes. "In States whose courts recognize the authority of the general rule that the *situs* of a debt is at the domicile of the creditor it is sometimes admitted that 'this fiction always yields to laws for attaching the property of a non-resident, because such laws necessarily assume that the property has a *situs* distinct from the owner's domcile.' *Wyeth Hardware etc. Co.*, v. *Lang*, 54 Mo. App. 147; affirmed in 127 Mo. 242; 48 Am. St. Rep. 626. Statutes and the custom of London may, and often do, for the purposes of attachment or garnishment at the suit of a third person, give the debt a *situs* at the domicile of the debtor: *Swedish-American Nat. Bank* v. *Bleecker*, Minn. Sup. Ct., May, 1898; *Williams* v. *Ingersoll*, 89 N. Y. 508; *Douglass* v. *Phenix Ins. Co.*, 138 N. Y. 209; 54 Am. St. Rep. 448; *Lancashire Ins. Co.* v. *Corbetts*, 165 Ill. 592; 56 Am. St. Rep. 275. Compare *Root* v. *Davis*, 51 Ohio St. 29. 'We conceive it to be well settled by authority,' said the court in *Reimers* v. *Seatco Mfg. Co.*, 70 Fed. Rep. 523, 37 U. S. App. 426, 'that while, generally speaking, the *situs* of a debt is constructively with the creditor to whom it belongs, it is within the competence of the sovereign of the residence of the debtor by reason of its control over its own residents to pass laws subjecting the debt to seizure within its territorial sovereignty:' See *Pomeroy* v. *Rand*, 157 Ill. 176; *Bragg* v. *Gaynor*, 85 Wis. 468; *Newland* v. *Circuit Judge*, 85 Mich. 151." 69 Am. St. Rep. 118, 119.

In a number of the cases referred to in these portions of the note, the decisions stand upon the view that neither debtor nor creditor resided in the state in which it was attempted to subject the debt, and whether it was with the

debtor or creditor was wholly immaterial. *Swedish-American Bank* v. *Bleecker*, 72 Minn. 383; *Douglass* v. *Phenix Ins. Co.*, 138 N. Y. 209; *Bank* v. *Furtick*, 69 Am. St. Rep. 99; *Rairoad Co.* v. *Dooley*, 78 Ala. 524; *Railroad Co.* v. *Chumley*, 92 Ala. 317; *Central Trust Co.* v. *Chattanooga &c. Co.*, 68 Fed. Rep. 685.

Though a great deal is said in the reported cases in support of the doctrine that the debt follows the person of the creditor, few decisions in attachment cases stand upon it. It is usually referred to as a general principle having more or less bearing upon some other proposition which forms the basis of the final disposition of the case. *Missouri Pacific Railway Co.* v. *Sharitt*, 43 Kan. 375; *Railway Co.* v. *Sturm* and *Railway Co.* v. *Campbell*, reversed by the Supreme Court of the United States, 174 U. S. 710, however, adopt and apply that rule.

It is manifestly at variance with a fundamental principle of the law of attachment, and the conception of the nature of the rights to be vindicated and wrongs to be redressed, which originally called the remedy by attachment into being and has made its use indispensable in modern jurisprudence. All courts characterize it as a special, anomalous and harsh remedy, authorizing the seizure of the debtor's property in advance of an adjudication against him. It is based upon and deals with circumstances and conditions which put it beyond the power of the court to do justice and work out the substantial rights of the parties by the use of the ordinary legal remedies. Total want of remedy at law and inadequacy thereof in view of the peculiar situation of the parties, respecting property and personal rights, necessitated the establishment of the system known as equity jurisprudence for the vindication of equitable rights of which the law courts could take no notice and for relief against fraud and mistake. Under this system, authority is generally exercised over the persons of the parties in respect to their rights, rather than over the property which is the subject matter of their differences, although in many instances the property itself is a subject of the direct and immediate action of the court. But the circumstances are often such that the remedies in equity are not broad, flexible and swift enough to prevent the impending wrong, or save the endangered right,

of the party. Hence, the necessity for the special statutory remedy by attachment, substantially in the form in which it was exercised by the courts of London under a custom, as a jurisdiction peculiar to those courts, unknown throughout the balance of the kingdom, and giving relief under practically the same conditions and of the same kind as that afforded by attachment by the custom of London. The extraordinary circumstances calling for its exercise creates a right which, in fact, and in its nature, is equitable rather than legal, as tested by legal and equitable rules and principles, unaffected by any custom or statute. Fraud in some form or non-residence of the debtor renders the ordinary common law remedies unavailing. Fraud, so far as they are concerned, may wholly deprive the creditor of his rights, and non-residence of the defendant makes it impossible for the creditor to sue in his own state and unjustly compels him to pursue the fleeing debtor into a foreign jurisdiction, although he has left property behind him, amply sufficient to pay the debt, against which the creditor cannot proceed by any form of action known to the common law. Instead of awaiting such further development of equity jurisprudence, as to enable it to give the creditor under these circumstances what he has a clear moral right to exact, the legislature adopted as a legal remedy that which has existed for centuries by the custom of London, and allowed a legal proceeding against property of the defendant as well as against his person.

If, by giving a remedy against the resident debtor of the non-resident creditor, who is the debtor of the plaintiff, the legislature has impliedly said the plaintiff may, by a legal process, resort to the man in whose hands the money belonging to the absent defendant is, and thereby make him hold the fund as a trustee, or deliver it to an officer of the court, all the right which the defendant may have to that fund shall be deemed to be within the jurisdiction of the courts of this State for the purposes of the attachment, can the court say it shall not be so? The statute is founded upon a recognition of the plaintiff's moral right to treat him as a trustee and declares that he shall be so treated in the law courts. But for the statute, the legal right and property in the debt would undoubtedly be with the absent creditor. As

the statute exists, however, we must keep our eyes upon the conditions it has wrought out and not wander into a field of speculation from which we are fenced out by the plain intent and inevitable force and effect of the statute, in the ultimate achievement of the end for the accomplishment of which the statutory remedy is given, namely, seizure of the debt at the residence of the debtor, prevention of its withdrawal by either party from the territorial jurisdiction of the court, extinquishment of the creditor's interest in it by adjudication, and application of it to the payment of the plaintiff's debt.

To the anticipated suggestion that this line of argument assumes the determination of the very point in controversy, the reply is that one of the declared and primary objects of the remedy is to reach and subject the property and effects of non-resident debtors. Non-residence is the basic fact of the jurisdiction and the remedy. Are we to assume that it was not the intention to subject debts due the defendant, but only tangible property? Is it possible that the law makers of all the states have stood by in silence and watched the courts for centuries misapply the remedy to the detriment and injury of thousands of people, without inserting a simple exception in the statute?

As already indicated, the attachment system of law had its origin in the custom of London. By that law, it determined and announced that, for its purposes, the debt was annexed to the person of the debtor and not to that of the creditor. "By this custom, a debt contracted without the jurisdiction of the city may be attached, if the debtor is found within the jurisdiction, *for every debt follows the person of the debtor.*" 3 Bac. Abr. 54. "Neither is it necessary to aver, that the plaintiff in the principal case was indebted to the plaintiff below within the jurisdiction of the Mayor's Court; for it is not necessary that the debt should arise, or the defendant reside within it, or that he should be actually summoned." *Id.* 56.

The position here adopted was taken by the Supreme Court of the United States in *Railway Co.* v. *Sturm,* 174 U. S. 710. Mr. Justice McKenna, delivering the opinion, said: "Our attachment laws had their origin in the custom of London. Drake, section 1. Under it a debt was regarded as

being where the debtor was, and questions of jurisdiction were settled on that regard. In *Andrews* v. *Clarke*, 1 Carth. 25, Lord Chief Justice Holt summarily decided such a question, and stated the practice under the custom of London. The report of the case is brief, and is as follows:

" 'Andrews levied a plaint in the Sheriff's Court in London and, upon the usual suggestion that one T. S. (the garnishee) was debtor to the defendant, a foreign attachment was awarded to attach that debt in the hands of T. S., which was accordingly done; and then a diletur was entered, which is in nature of an imparlance in that court.

" 'Afterwards T. S. (the garnishee) pleaded to the jurisdiction setting forth that the cause of debt due from him to the defendant Sir Robert Clarke, and the contract on which it was founded, did arise, and was made at H. in the county of Middlesex, *extra jurisdictionem curiae;* and this plea being overruled, it was now moved (in behalf of T. S., the garnishee,) for a prohibition to the sheriff's court aforesaid, suggesting the said matter, (viz.) that the cause of action did arise *extra jurisdictionem*, etc., but the prohibition was denied because the debt always follows the person of the debtor, and it is not material where it was contracted, especially as to this purpose of foreign attachments; for it was always the custom in London to attach debts upon bills of exchange, and goldsmith's notes, etc., if the goldsmith who gave the note on the person to whom the bill is directed, liveth within the city without any respect had to the place where the debt was contracted.' The idea of locality of things which may be said to be intangible is somewhat confusing, but if it be kept up the right of the creditor and the obligation of the debtor cannot have the same, unless debtor and creditor live in the same place. But we do not think it necessary to resort to the idea at all or to give it important distinction. The essential service of foreign attachment laws is to reach and arrest the payment of what is due and might be paid to a non-resident to the defeat of his creditors. To do it he must go to the domicile of his debtor, and can only do it under the laws and procedure in force there. This is a legal necessity, and considerations of *situs* are somewhat artificial. If not artificial, whatever of substance there is must be with the debtor.

He and he only has something in his lands.    That something is the *res.* and gives character to the action as one in the nature of a proceeding *in rem.    Mooney* v. *Buford & George Mfg. Co.*, 72 Fed. Rep. 32; Conflict of Laws, section 549. and notes."

Does the additional circumstance, that the debt is payable in the foreign state, vary the law in this respect? The affirmative of this proposition is predicated upon the supposition that a debt made payable to a person in the state in which he resides is thereby specially annexed to him, and withdrawn from the jurisdiction in which the debtor resides, if they are in different states.    It is not pretended that it can have a *situs* irrespective of both debtor and creditor.    If it can be said to have a *situs* at all, it must be with the one or the other of them.    It has no tangible existence.    Hence, the only conceivable effect that could result from making the debt payable at the residence of the creditor, in this connection, would be the more effectual binding of it to his person.    Can it be said that the circumstance of the place at which a debt is made payable makes it more effectually, or sacredly, the property of the creditor?    Suppose it did.    Is it not the very object and purpose of the attachment to extinguish his right and property in the debt so far as may be necessary to effectuate satisfaction of the plaintiff's debt?    Does it depend upon whether the debt is bound to him tightly or not? If it were attached to his person at all, would it not defeat the jurisdiction?    If this consideration could have any force, it would be necessary to give it some effect, when the debt is payable at a place in which neither party resides.    What possible effect could it have.    Would it put the debt beyond reach through either debtor or creditor?    This would be a bald absurdity, in which everything of substance would be sacrificed to a bare technicality.    Place of payment has nothing to do with the place of enforcement.    No action can be maintained for the debt by anybody until after default.    Action does not produce payment at the place named.    It exacts damages for the breach, payable in the jurisdiction of the forum.    There can be no action until after breach of the contract and then it may be maintained wherever the defendant can be sued.    That the garnishment prevents compliance with all the terms of the contract is no valid objection,

because its primary office is to break asunder the contractual relations between the debtor and creditor to the extent of substituting the plaintiff to the beneficial interest of the creditor in the debt.

Having no doubt about the untenableness of the position, that the proceeding must be at the place of residence of the defendant the next inquiry is whether the garnishee is within the jurisdiction of the court.   In the case of *Pennsylvania &c Co.* v. *Rogers*, 52 W. Va. 450, this Court held that a foreign railroad corporation, operating no line of road, nor carrying on its ordinary business, within the state, is not subject to garnishment in respect to a debt due from it to a non-resident, not agreed to be paid to him within the state. If, notwithstanding the different situation of the plaintiff, which built and operates its road within the state, under legislative authority specially conferred, its legal status is the same as that of the Pennsylvania Railroad Company, the conclusion will be the same.   The difference in that respect, if any, is the only ground upon which the two cases can be distinguished, except as to service of process.   This case differs from *Mahany* v. *Kephart*, 15 W. Va. 609, and *Stevens* v. *Brown*, 20 W. Va. 450, in only one important particular, namely, that in each of those cases the defendant, creditor of the railroad company, appeared, but did not appear in this.

As asserted in *Pennsylvania &c. Co.* v. *Rogers*, by way of marking the distinction between it and *Mahany* v. *Kephart*, this Court, in the latter, most assuredly decided the status of the Baltimore and Ohio R. R. Co. to be such as made it liable to the process of garnishment at the instance of a resident assignee of a debt contracted by the defendant in another state, on account of wages due the defendant from the assignee for services rendered in such other state.   In delivering the opinion of the Court, Haymond, Judge, said: "I am unable to see if the said railroad company can be sued for debts contracted in this State, why it may not also be sued in this State for debts contracted in other states.   It would be strange indeed if residents of this State could sue and enforce the payment of their debts contracted in this State against said railroad company and its property in this State, through the courts thereof, and non-resident creditors, and resident

creditors of said railroad company where contracts are made in another state, should be denied the same rights and privileges and thus be left without remedy in our courts. I do not feel at liberty to so hold under my convictions of the law with us touching the question. Certainly if Kephart could have properly sued the railroad company for said $105.00 in the county of Harrison, at the time this action was brought, the plaintiff in this suit had a right to sue Kephart there and garnishee the railroad company there as the debtor of Kephart.'' Following this is the assignment of the reasons for his conclusion. In this part of his opinion, he makes no reference to the appearance of the defendant as having aided the jurisdiction of the court. It is alluded to only upon the inquiry as to .the power of the court to render .a personal judgment against him. However, it may have been, in law, a waiver of defects which would otherwise have been held fatal, in consequence of which it could now be relied upon as showing the decision to be sound in principle. Whether it would have made any difference in the opinion and conclusion of the Court, no person can possibly know, since it cannot be ascertained from the report of the decision.

The Baltimore and Ohio R. R, Co. is undoubtedly a foreign corporation, as tested by the jurisdiction of the federal courts. *Baltimore &c. Co.* v. *Harris*, 12 . Wall. (U. S.) 65; *Marshall* v. *Baltt. & O. R. R. Co*, 16 How. 329; *O. & M. R. R. Co.* v. *Wheeler*, 1 Black, 297; *Railwy Co.* v. *Whitton*, 13 Wall. 583. This Court, in *Rice* v. *N. N. M. & V. Co.*, 32 W. Va. 164, came to the same conclusion, under the federal authorities above cited, and others. But the test of jurisdiction in the federal courts is not residence, but citizenship, under section 2 of article 3 of the federal constitution, extending the judicial power to all cases ''*between citizens of different states.*'' The distinction between citizenship and residence, as applied to corporations is observed by the courts. "It should be observed that the corporation, although it may have a *quasi habitat* or residence in another state than that which created it, yet *cannot be a citizen* elsewhere, and therefore cannot claim.the benefit of that clause of the United States Constitution (Art. 4 section 2) which declares that "the *citizens of each state* shall be entitled to all

privileges and immunities of *citizens* in the several states."

Upon applications for removal of causes from state to federal courts, as in *Rice* v. *N. N. M. & V. Co.*, cited, and perhaps a few other instances, the state courts are called upon to notice and observe this distinction, but in the ordinary actions by and against corporations, jurisdiction is tested by the fact of residence, except when it is acquired under special statutes. Though a corporation is incapable of having a residence tn the sense in which that term is applied to an individual, just as it is not, in fact, a citizen, it may be and is often deemed to have a residence, or the equivalent thereof, in a state other than that of which it is a citizen.

There is no conflict between this view and the conclusion expressed in *Pennsylvania &c. Co.* v. *Rogers*. The garnishee in that case was only temporarily or casually in the state. It had an agent here for a special purpose. Its situation was analogous to that of a non-resident individual temporarily or casually in the state, having no usual place of abode at which service could be made in his physical absence therefrom. Here, the case is radically different. The corporation actually operates its road through the state, having agents along its line permanently, upon whom service may be had at any time, owning property of immense value and carrying on a business of vast proportions, in view of which the statute contains special provisions, applicable to such foreign corporations and to no other, as will be shown.

By the great weight of judicial authority this gives it the equivalent of residence in the state, and as a resident it may be proceeded against as garnishee, just as a resident individual may. "Accordingly the doctrine of the court now is that several states may by competent legislation unite in creating the same corporation or in combining several pre-existing corporations into a single one; that one state may make a corporation of another state, as thus organized and conducted, a corporation of its own, as to any property within its territorial jurisdiction; and that a state may by an enabling act authorize a corporation created in another state to build and use a railroad within its own limits without creating a new corporation. Illustrations of these conclusions are now

seen every day in the passage by states of enactments mak-
ing foreign corporations, doing business within the domestic
jurisidictions, domestic corporations, and amenable in all
respects to the domestic laws and police regulations, not-
withstanding the provisions of their foreign charters.    But
it remains equally true that for many purposes of legal pro-
cedure and practical convenience in the administration of
justice each one of the bodies so  created remains. a domestic
corporation within the state under whose legislature it has
been called into existence.    Clearly such a corporation is a
domestic corporation within each of the states whose legisla-
tion has created it, for the purpose of local  jurisdiction  to
the application of local police regulations.    Such a corpora-
tion is a resident of each of such states, for  the  purpose  of
the ordinary jurisdiction of its courts, and consequently may
be subjected to garnishment in any · one of them, pro-
vided the *situs* of the  debt is  there, although  its  prin-
cipal office or place of business be not there."    10 Cyc.
170, 171.

In *Fire Ins. Co.* v. *Chambers*, 53 N. J., Eq. 468, the
court holds that "A corporation is capable of having several
domiciles and of being sued at the same time in more than
one jurisdiction."    The opinion in that case reviews many
decisions, English and American, holding this doctrine.
Though not accrediting the foreign corporations with a dom-
icile in the state, the following cases hold it liable as gar-
nishee: *Mooney* v. *Buford*, 72 Fed. Rep. 32; *Pomeroy* v.
*Rand, NcNally & Co.*, 157 Ill. 176; *Mooney* v. *Raiload Co.*,
60 Ia. 146; *Bank* v. *Insurance Co.*, 83 Ia. 491; *Railroad Co.*
v. *Thompson*, 31 Kan. 180; *Hawey* v. *Railroad Co.*, 50 Minn
405; *Hardware Co.* v. *Lang*, 127 Mo. 242.    In some of them,
it is done on the theory of a *qausi* residence  in the  state  by
the corporation, thereby holding the *situs* of the debt to be in
the state.    In others, the courts proceed upon the assumption
that a debt has no *situs* and that the debtor may be proceeded
against wherever  service upon  him may be had, without re-
gard to his residence.    This doctrine is contrary to  the prin-
ciples underlying the decision in *Pennsylvania Co.* v. *Rogers*,
cited, which arc  believed to  be sound and supported by the
great weight of judicial authority.    A non-resident may be
summoned as garnishee, but upon his showing that he has

nothing in the state belonging to the defendant and is not bound to deliver or pay him anything in the state, he must be discharged.

There are decisions, however, which hold foreign corporations, having the right to do business, and consenting to be sued, in the state, not liable as garnishees, unless they have property of the defendant in their possession within the state, or are bound to deliver property or pay him money in the state. *Railroad Co.* v. *Dooley*, 78 Ala. 524; *Railroad Co. Chumley*, 92 Ala. 317. In the last named case, the court held a judgment, rendered in Tennessee against an Alabama railroad company, operating its road through the former state, as garnishee, for wages earned in the latter state, void on the ground that the Tennessee court had not acquired jurisdiction, saying: "Plaintiff being a resident of Alabama, and defendant an Alabama corporation, the debt, being contracted and payable in this state, could not be subjected by process of garnishment by a court of Tennessee."

Similarly, in *Douglass* v. *P. Ins. Co.*, 138 N. Y. 209, it was held that: "The right of a creditor of a corporation to prosecute an action to recover the debt in the courts of his own state cannot be defeated by the pendency of attachment proceedings against him in another state by a creditor there, when the only claim of jurisdiction by the foreign court rests upon authority given by the statutes of its state to seize the debt by and through process proceedings against an agent of the corporation in that state. (2) While a state may authorize the seizure and sale by means of appropriate legal proceedings, of property of non-residents in the jurisdiction, for the payment of their debts, it cannot subject to its laws either their real or personal property out of the jurisdiction. (3) In attachment proceedings the *res* must be within the jurisdiction of the court issuing the process in order to confer jurisdiction. (4) A domestic corporation has at all times its exclusive residence and domicile in the jurisdiction of origin, and it cannot be garnished in another jurisdiction for debts owing by it to home creditors, so as to make the attachment effectual against such a creditor in the absence of jurisdiction acquired over his person. (5) The law of a state cannot make a debtor, who is actually a nonresident, a resident, by so declaring, at least so as to bind

another jurisdiction by the declaration.    (6) The legal proceedings or judgments of another state are recognized here only where jurisdiction has been acquired according to the course of the common law in the foreign forum; and this although the statutes of that state purport to give its courts jurisdiction, in disregard of the principles and rules of general jurisprudence, which this state is bound to recognize."

*Bank* v. *Furtick*, 69 Am. St. Rep. 99, holds that foreign corporations cannot be summoned as garnishee in one state to reach a debt payable by it in another state. This proceeds upon the theory of *situs* at the residence of the creditor. *Swedish-American Nat. Bank* v. *Bleecker*, 72 Minn. 383, embodies the same conclusion, based upon a different ground, namely, non-residence of the garnishee corporation, the same as that upon which we put the decision in *Railroad Co.* v. *Rogers*. The syllabus says: "Our statute requires a foreign insurance company, before doing business in this state, to file a stipulation agreeing that any legal process affecting such company, served on the insurance commissioner, shall have the same effect as if personally served on the company. *Held*, such a stipulation filed by the garnishee does not give it a domicile in this state for all purposes, or bring into this state the *situs* of a debt which it owes elsewhere by reason of business transacted elsewhere, and such a debt cannot be seized in an action *in rem* in this state."

Aside from the Alabama decisions, none of these were railroad cases. In *Railroad Co.* v. *Chumley*, the Alabama court says: "Several statutes of Tennessee, regulating proceedings of garnishment and service of process upon corporations, were introduced in evidence; but we fail to find among them any statute providing for service of process upon foreign corporations in garnishment suits. It may be, that the language is comprehensive enough to include proceedings by garnishment, when the property sought to be reached is in the jurisdiction of the State, though the garnishee may be a non-resident; but in the absence of evidence of any construction by the courts of Tennessee, we can not interpret the statutes as intending to place within the jurisdiction of the State, property which has no locality there."

Upon examination of the Tennessee statutes, it discovered no purpose or intent to make the foreign corporation in any sense a resident of Tennessee, and, therefore, the *situs* of the debt, could not be upon either theory of that subject, within the state of Tennessee.   As to the other cases, we might reach the same conclusion under our statutes, and be in perfect accord with *Railroad Co.* v. *Rogers*, for the statute confers upon foreign railroad corporations rights and powers materially different from those conferred upon other foreign corporations.   As to the latter, section 30 of chapter 54 of the Code says that, upon complying with certain requirements, they "shall have the same rights, powers and privileges, and be subject to the same regulations, restrictions and liabilities that are conferred and imposed" on corporations chartered under the laws of this state.   In construing this language, we must not lose sight of other provisions concerning, and affecting the status of, foreign corporations.   A ground of attachment in this state is, "That the defendant, or one of the defendants, is a *foreign corporation*, or a non-resident of this state."   Code chapter 106, section 1.   This evinces an intent to deny to them residence within the state.   The statute has been so construed, not only here but in Virginia also.   They are subject to the attachment laws. *Quesenberry* v. *Building Association*, 44 W. Va., 512; *Savage* v. *Building Association*, 45 W. Va. 275; *Cowardin* v. *Life Ins. Co.*, 32 Grat. 445.   These decisions are probably sound in principle.   The provision of means of obtaining jurisdiction of the person may well be held to have been intended to give a cumulative remedy and not to take away any of those already in existence.

But the language of that section applicable to railroads is much broader, indubitably subjecting them to the liabilities and according them all the rights of residents, except in so far as it has been qualified by the decision in *Rece* v. *N. N. M. & V. Co.*, 32 W. Va. 164, namely, that it does not deprive them of their rights in respect to federal jurisdiction.   The language is:   "Every railroad corporation doing business in this state under the provisions of this section, or under charters granted or laws passed by the state of Virginia, or this state, is hereby declared to be, as to its works, property, operations, transactions and business in this state, a domes-

tic corporation, and shall be so held and treated in all suits and legal proceedings which may be commenced or carried on by or against any such railroad corporation, as well as in all other matters relating to such corporation." In view of this, can it be treated as a non-resident and its property made liable to attachment in every county through which it passes, for every sort of attachable claim that might arise? No such unreasonable assumption seems ever to have entered the mind of any person. Legislative intent to the contrary is made too plainly manifest. That would violate rights plainly conferred by the express language of the statute. It would not be treated as to its property, business, operations, and transactions within the state as domestic corporations are. While conferring upon it all the privileges and immunities incident to residence, the legislature endeavored to impose the liabilities incident thereto. Accordingly the statute says they shall be held to be, and treated as, domestic corporations in all suits and *legal proceedings* which may be commenced or carried on by or against them. Garnishment is a legal proceeding, though possibly not a suit directly against the garnishee, as to which we need not determine. Nor are such suits and proceedings limited by the place of origin of the cause of action. In *Humphreys* v. *N. N. M. & V. Co.* 33 W. Va. 135, the cause of action was damages for a personal injury which occurred in another state. This Court held that the action was maintainable because service of process could be had in this state, but it did not note any distinction between citizenship and residence. It was unnecessary to do so, since service of process alone gave the requisite jurisdiction. To hold a railroad to be a non-resident for one purpose and a resident for another would be not only inconsistent but violative of the manifest purpose and intent of the legislature, disclosed by the statute above quoted.

The Baltimore and Ohio Railroad Company, and other corporations of its class, at the time of the decision of the case of *Mahany* v. *Kephart*, were distinguished in their status from other foreign corporations, by a statute passed Dec. 27, 1873, Acts 1872–73, chapter 227, section 16. It declared that "All railroad companies doing business in this state under charters granted or laws passed by the state of Virginia or

this state, are hereby declared to be domestic companies or corporations, and shall be treated as such in all cases." The Baltimore and Ohio Railroad Company was necessarily included among those doing business under laws passed by the state of Virginia. This provision, modified and combined with others enacted from time to time, finds a place now in section 30 of chapter 54 of the Code.

In view of it and of the reasoning of Judge Haymond in that case, we cannot say the decision is wrong or would have been wrong, had there been no appearance on the part of the defendant. Nor can we say now, in view of the existing statutory provisions adverted to, that the status of a railroad company doing business in this state within the meaning of those statutes, is not equivalent to that of a resident of the state. On the contrary we think it is, and, for that reason, it may be proceeded against as a garnishee to the same extent, and in respect to the same classes of debts, as natural persons, residing in this state. Just here it is proper to say the use of the word "domicile" in the case of *Railroad Co.* v. *Rogers*, 52 W. Va. 450, is inaccurate, as it is in some other cases, discussed in the opinion in that case, and in this, and is to be taken and applied in the sense of "residence." Nor can the Pennsylvania Railroad Company, upon the facts disclosed by the record in its case against Rogers, be consistently held to have the status of the Baltimore and Ohio Railroad Company, since it operates no line of road here, and has not put itself within the letter or spirit of the statute by merely having a soliciting agent in the state.

That this ruling may deprive the employes in other states of foreign railroad companies, doing business in this state, of the benefit of exemptions allowed them in such other states, cannot be permitted to alter the principles of law governing the case. *Stevens* v. *Brown*, 20 W. Va. 450, presented that feature to this Court without avail. It went up to the Supreme Court of the United States in *Railroad Co.* v. *Sturm*, 174 U. S. 710, with the same result. The doctrine of *Stevens* v. *Brown* is too well settled by authority of the highest character to permit any disturbance of it. Should the garnishee be compelled to make a double payment on account of the services rendered it, the fault will be, as we think, with the court of some other state, which can only compel the second

payment by refusing to give the judgments of the courts of this state the full faith and credit to which they are entitled under the federal constitution.    For that, there is a plain remedy.

For the reasons aforesaid, the judgment will be affirmed.

### *On re-hearing.*

The correctness of the conclusion above stated, as to the status of a foreign railroad corporation doing business in this state, is vigorously resisted on the re-hearing. . As that is the pivotal question in the case, the argument demands attention.    First, it is said the case of *Mahany* v. *Kephart*, 15 W. Va. 609, does not treat the Baltimore & Ohio R. R. Co. as a domestic corporation, and that this view is precluded by certain expressions in the opinion, one of which is the reference to the *B. & O. R. R. Co.* v. *Gallahue*, 12 Grat. 625, saying: "However, it was not necessary to decide in that case whether the said Railroad Company could be sued or garnished upon contracts made in another state." That was because the contract sued on was a Virginia contract.    But in *Mahany* v. *Kephart*, the contract on which the main action was predicated was made in Baltimore, Maryland, and had come into the hands of a citizen of this state by assignment, and the labor for the value of which the railroad company was garnished was performed in Maryland.    No matter, therefore, what the Virginia court had decided, this Court did decide that the Baltimore & Ohio Railroad Company could be sued here for a debt, arising out of a contract made in another state, and could be held as garnishee as to wages due for labor performed in another state, and JUDGE HAYMOND said of the Gallahue case: "But I think on close examination of the opinion of the Court it was not intended to restrict the right to sue or garnishee the said railroad company to Virginia contracts." The other expression relied upon has no reference whatever to the question now under consideration, as will appear from the connection in which it was used.    JUDGE HAYMOND did say "But I do not now definitely pass upon that question as it does not fairly arise in the case." The question referred to is whether, if the debt garnished had been expressly made payable in Maryland, this circumstance would have called for a different decision.    The sentence immediately preceding the one last above quoted reads as follows :

"Neither the facts agreed nor the answer of the garnishee shows, or pretends, that there was any express agreement that the said $105.00 due Kephart should be paid in the State of Maryland; and if they did so show, I am not now prepared to decide that it would or should affect the case or change my conclusion therein." What we decide here now is just what Judge Haymond then intimated as his opinion, namely that such stipulation does not affect the case, and we say so because the garnishee is to be dealt with as a resident individual would be. The effect of such stipulation when the garnishee is a resident has been determined in the discussion of the question of *situs*, which need not be here repeated. In *Pennsylvania R. R. Co.* v. *Rogers*, 52 W. Va. 450, we said it did make a difference, because the garnishee was a non-resident. The contention here is that a railroad company doing business in this state is to be treated as a domestic corporation *quoad* only, "its works, property, operations, transactions and business in this state," and therefore, cannot be sued on a contract or obligation, arising out of, or pertaining to, its business in another state; and the contrary of this, we repeat, has been expressly decided in *Mahany* v. *Kephart*, as well as in other cases, referred to in the opinion. Whether a resident may be discharged from garnishment by showing the debt to be payable in another state is an entirely different question now, and was such in *Mahany* v. *Kephart*.

A further contention is that, by alteration of the statute, governing foreign railroad corporations doing business in the state, since the decision in *Mahany* v. *Kephart*, the status of such corporations has been changed. The act of December 27, 1873, quoted in the opinion, was too broad. Its purpose went beyond the limits of legislative power, as was soon revealed by decisions of the federal supreme court. The legislature could not deprive the federal courts of their jurisdiction by declaring a foreign corporation to be a domestic one. It probably occurred to our legislators that, in some other respects, such corporations could not be domesticated. We could not annul or alter the charter of a corporation of another state or dissolve it. All we can do is to exclude it from the state or limit its powers and privileges here, and impose burdens and liabilities. We cannot have or exercise any extra-territorial power over them. Realizing this and seeing

the excessive and futile breadth of our statute, the legislature modified it.   For what purpose and to what extent?   Simply for the purpose of reducing it within the limits of its legitimate powers over the subject matter, and to no greater extent.   The evil intended to be overcome by the change is perfectly apparent.   That is the best measure, or standard, by which to determine the extent of the change intended, and it falls far short of the subject matter of this discussion and contention.   Surely it was never intended to deprive citizens of this state of the right to sue such corporations for debts due them, or for debts which they have the right to acquire by a legal proceeding, such as garnishment.   Nothing in the language of the statute suggests this and it is not within the reason for the alteration made.   Such a debt or right, held by a citizen of this state, no matter where it arose, is a matter relating to such corporation, and the statute says it shall be held to be, and treated as, a domestic corporation in all suits and legal proceedings which may be commenced or carried on by or against it "as well as in all other matters relating to such corporation."

Having carefully re-examined the case and considered the argument on the re-hearing, we are convinced that the conclusions set forth in the opinion filed on the former hearing are correct, and the judgment then rendered will be now re-entered.

*Affirmed.*