ISTHMIAN LINES, INC., a corporation, Libelant,

v.

CANADIAN STEVEDORING COMPANY, Ltd., a corporation, Respondent.

Civ. No. 61–392.

United States District Court
D. Oregon.
March 29, 1963.

Erskine B. Wood, Wood, Wood, Tatum, Mosser & Brooke, Portland, Ore., for libelant.

Kenneth E. Roberts, Mautz, Souther, Spaulding, Kinsey & Williamson, Portland, Ore., for respondent.

EAST, District Judge.

Libelant, a Delaware corporation, has its principal office in New York City and is engaged in the ownership and operation of seagoing steamships, one of which is the SS STEEL SURVEYOR (Vessel);

Respondent is a Canadian corporation engaged in the business of an independent contracting stevedore at Vancouver, British Columbia, and has not at any time in the past conducted its business within the District of Oregon;

During February, 1960, respondent, pursuant to a stevedoring contract, performed work and furnished materials in the nature of installing wooden grain fittings and shorings in No. 4 hold of the Vessel while she was in the Port of Vancouver, B. C.;

Thereafter, the Vessel proceeded to the Port of Portland (District of Oregon) to load grain, and in the course of such loading one Glenn Burns, a ship-working longshoreman, was struck and injured by a falling piece of wooden shoring insecurely installed or attached by respondent at Vancouver, which condi-

tion had rendered the Vessel unseaworthy;[1]

Libelant ultimately sustained financial loss through a compromised settlement of Burns' litigation claim for damages arising from his injuries, and libelant, through these admiralty proceedings *in personam*, seeks indemnity over from the respondent.

## EXCEPTION TO JURISDICTION

The libel alleges that:

The States Steamship Company (States) is a Nevada corporation, and the American Mail Line, Ltd. (American) is a Delaware corporation, and each corporation is a shipping company engaged in worldwide shipping businesses and is doing business and maintaining an office, respectively, in Portland, and both States and American are debtors to respondent on separate accounts for services rendered in Vancouver; and

Respondent was a nonresident and could not be found within this District and named States and American as foreign corporations doing business and maintaining offices within Portland, each being a debtor of respondent;

Libelant caused the Marshal of this District to levy process of foreign attachment herein by the garnishment of the credits of respondent in the hands of States and American, respectively, and States and American have each honored the levy of garnishment;[2]

Respondent, with leave of court, renews its exception to the jurisdiction of this court in these proceedings, concededly obtainable only through the foreign attachment described, and squarely presents the question:

"Whether a United States District Court sitting in admiralty has jurisdiction to enter a judgment in personam where the respondent is a foreign corporation not doing business within the District nor in any way subject to the jurisdiction of the court other than through the process of foreign attachment by the garnishment of its debtors on a debt payable outside the District, and who are also foreign corporations but engaged in their respective businesses through authorized agents within the District?"

■ The main thrust of respondent's position is that the situs of States' and American's debts to it is not within the District of Oregon and therefore there is no property or *res* within the District to utilize or apply to the satisfaction of any judgment obtained by libelant against it. Respondent relies upon Skibs A/S Abaco, A. A. & N. v. Ardeshir B. Cursetjee & Sons, 133 F.Supp. 465 (S.D.N.Y.1955). At first blush, Skibs appear to support the respondent; however, a perusal of its language clearly reveals that it is distinguishable from the situation here in that Skibs' libel for indemnity over was premature and no equitable grounds existed to favor or save libelant's claim of potential liability or anticipatory cause of action. While it is true that here the parties' contractual relationships developed and the unseaworthy condition of the Vessel occurred in the Port of Vancouver and the unseaworthy condition ultimately delivered its harm in the Port of Portland, nevertheless, discretion here does not dictate that citizen libelant should be denied process in the District of Oregon and relegated to British Columbia (as was alien Skibs denied in the District of New York and relegated to India), rather than to ask the Canadian citizen to come to the District of Oregon and answer for the harm it produced there. It goes without saying that the United States

1. The question of whether the Vessel was unseaworthy is a question under submission to this court on the merits, and for the purpose of this opinion the court assumes unseaworthiness of the Vessel through fault of respondent.

2. Perusal of the Marshal's return of service of his writ of foreign attachment does not state facts showing due or diligent search for respondent in this District, and the court assumes this defect can be remedied by amending the Marshal's return.

court will grant the Canadian citizen comity.[3]

A prior judge of this District dealt with the basic problem of a court's process and jurisdiction as is presented here in a cause then entitled Neff v. Pennoyer. This cause grew into the jurisprudential giant intimately known to every law student as Pennoyer v. Neff, 95 U.S. 714, 24 L.Ed. 565.

▆▆ Pennoyer teaches that a sovereign cannot subject nonresidents to the jurisdiction of its courts unless the nonresident is served with Constitutional process within its territorial boundaries or voluntarily appears, *except* to the extent such nonresident has property situate within those boundaries. In that case, such property may be reached and garnered by the process from that sovereign's court, i. e., attachment or garnishment. Thereafter, the property in lex custodi may be appropriated by the court for the benefit of and to the satisfaction of those having suable claims before the court against a nonresident owner of such property.

The opinion in Harris v. Balk, 198 U.S. 215, 222, 25 S.Ct. 625, 49 L.Ed. 1023 (1905), tells us:

"If there be a law of the State providing for the attachment of the debt, then if the garnishee be found in that State, and process be personally served upon him therein, we think the court thereby acquires jurisdiction over him, and can garnish the debt due from him to the debtor of the plaintiff and condemn it, provided the garnishee could himself be sued by his creditor in that State. We do not see how the question of jurisdiction *vel non* can properly be made to depend upon the so-called original *situs* of the debt, or upon the character of the stay of the garnishee, whether temporary or permanent, in the State where the attachment is issued. Power over the person of the garnishee confers jurisdiction on the courts of the State where the writ issues."

It seems that § 108 of the Restatement of Conflicts codifies the rule of Harris in this language:

"A state can exercise through its courts jurisdiction to compel payment by a debtor who is subject to the jurisdiction of the state of a claim against him in favor of his creditor and to apply the proceeds to the satisfaction of a claim asserted by a third person, as plaintiff, against the creditor, although the state has no jurisdiction over the creditor."

As for the "law of the State" (Harris, supra) of Oregon, O.R.S. 29.140 "Property Attachable" reads:

"* * * shares which the defendant may have in the stock of any association or corporation, * * * and all other property in this state of the defendant, not exempt from execution, shall be liable to be attached." See O.R.S. 29.170(3) for procedure on garnishment.

The Supreme Court of Oregon, dealing with the debt-situs phase of our problem in Pierce v. Pierce, 153 Or. 248, 56 P.2d 336 (1936), recited that the plaintiff, a resident of Oregon (place of residence or domicile being inconsequential—libelant here), sued the defendant, a resident of Nebraska (residence or domicile being highly significant—respondent here), in an Oregon court on defendant's promissory note held by plaintiff. Pursuant to O.R.S. 29.140 and 29.170(3), the plaintiff caused the New York Life Insurance Company, a foreign corporation doing business in Oregon (States and American here), to be garnished. The garnishee's return revealed that it held credits of the defendant in that the defendant was the recipient or beneficiary of monthly annuity benefit payments becoming payable in the future, which payments were payable to the New York City office of the garnishee. Justice

---

3. Burrard Drydock Co., Ltd. v. Canadian Union Line, Ltd. and Union Steamship Co. of New Zealand, Ltd., 1954 Can.Law Rep. 307 (Supreme Court of Canada).

Campbell of the Oregon court, in reaching his determination of whether a debtor may be garnished in any state other than the place of payment of his debt, wrote (p. 252, 56 P.2d p. 338):

> "The United States Supreme Court (Chicago R. I. & P. R. Co. v. Sturm, 174 U.S. 710, 19 S.Ct. 797, 43 L.Ed. 1144) held that the true test was whether the garnishee could be sued by the principal debtor (creditor, respondent here) in the county where the garnishment proceedings were instituted."

And further (p. 253, 56 P.2d p. 339):

> "A debt due from one person to another is a chose in action, and a chose in action is personal property."

So, when a debt is due and payable "an action may be brought against the payor at any place where he may be found." The Justice's conclusion was (pp. 253–254, 56 P.2d p. 339):

> " '[T]hat the right to garnish a debtor is not limited to the situs of the chose in action, and a garnishment by a citizen of one state of a debtor of the same state, whose creditor resides (or), whose debt was contracted and is payable in another state, is such an attachment of the chose in action as will authorize the court to obtain jurisdiction to dispose of it * * *.' [Citing] Tootle v. Coleman, 46 C.C.A. 132 [10 Cir.] 107 F. 41, 44, 57 L.R.A. 120."

Also, the proposition that

> " '* * * "the debt being due in (Canada) its situs was there, and could not be reached in (Oregon) by garnishment (is untenable)."

> " 'While it is true that for certain purposes the situs of a debt is at the residence of the creditor, it is certainly not true that the collection of the debt cannot be enforced in the state where the debtor resides. Under our statute a creditor may have an attachment against his debtor where he is a nonresident of this state.' " Pierce v. Pierce, 153 Or. 248, 253, 56 P.2d 336, 339.

> "New York Life Insurance Company * * * (by) transacting business in this state, has therefore submitted itself to the jurisdiction of the courts of this state for all necessary purposes." [4]

■ Rule 2, Rules of Practice in Admiralty and Maritime Cases (Supreme Court of the United States) implements the garnishments had in these proceedings, and I conclude the credits of the respondent in the hands of States and American so garnished may "be appropriated by (this) court for the benefit" and to the satisfaction of libelant's demand herein, if established.

This court's prior order disallowing plaintiff's exception to jurisdiction and motion to quash process is adhered to and shall remain.

## CONTRACT INDEMNITY CLAUSE

Respondent's stevedoring contract contained, *inter alia,* this clause:

> "The contractor agrees to indemnify and hold entirely harmless the company against any claim * * * by * * * persons for personal injury sustained during the progress of the contractor's work on or around the company's vessels * * *"

■ Contra to respondent's position, I am satisfied that such an express indemnity clause falls far short of an explicit disavowal of and does not put aside or extinguish the ever-present implied warranty to perform the entire stevedoring contract with due care and in a workmanlike manner. States Steamship Co. v. Portland Stevedoring Co., D.Or., 216 F.Supp. 934; Pettus v. Grace Lines, 305 F.2d 151 (2nd Cir. 1962).

---

4. "A well-considered case, Baltimore, etc., R. Co. v. Allen, 58 W.Va. 388, 392, 52 S.E. 465, 466, 3 L.R.A.(N.S.) 608, 112 Am. St.Rep. 975, 979, quotes extensively from the Sturm Case, and held that foreign railroads may be proceeded against as garnishees irrespective of the jurisdiction in which the debts for them were contracted or are payable." Pierce, supra, p. 254, 56 P.2d p. 339.

At this point I borrow some language from Italia Societa v. Oregon Stevedoring Co., 310 F.2d 481, 485 (9th Cir. 1962):

"(I am) not unmindful that negligence liability and warranty liability are not identical. Negligence is a liability in tort while warranty is generally associated with contract liability. Nevertheless, as indicated by the Supreme Court in Ryan the recovery of the shipowner in warranty still may turn upon a standard of performance of the stevedoring service. We believe that in the stevedoring cases the standard of performance is the same whether the ultimate liability be in tort (for negligence) or in contract (for breach of warranty).

"(My) belief is not altered by the mere fact that there can be no liability of the stevedoring company in tort. In these indemnity cases there is no liability in tort, not because the standard would be different from that of warranty, but rather, because prior to Ryan the Supreme Court had decided that there could be no contribution, based on comparative fault, between shipowner and stevedoring company in respect of seamen's injuries on the ground that there had been no contribution in the common law between joint tort feasors. Halcyon Lines v. Haenn Ship Ceiling & Refitting Corp., 342 U.S. 282, 72 S.Ct. 277, 96 L.Ed. 318 (1952)." p. 485.

"If the shipowner was to be relieved at all from the onerous burden of Halcyon, liability against the stevedoring company for its wrongs would necessarily have to be predicated upon contract and not tort. * * * And when this background is kept in mind it seems reasonable to posit that the warranty of workmanlike service was intended only to impose liability in contract similar to that which would otherwise have been imposed in tort (for being negligent in the performance of stevedoring services)—not that the one (warranty) is the substitute for the other (tort) but that the standard of performance in each case is the same." p. 486.

And so is the law of Canada. In Burrard (see n. 3), the shipowner sustained financial loss on account of water damage to cargo because they "had not exercised due diligence to make the (vessel) seaworthy," as required by Water Carriage of Goods Act of Canada, in that "a storm valve-covering had not been secured down tightly," thereby allowing sea water to enter en voyage. It appears that prior to the voyage the owner "had contracted with the (stevedore) to overhaul and repair the ship * * * specifically the work * * * 'all storm valves to be put into customary order. At present ineffective.'" A perusal of the opinion leaves one certain that the reason the court found the stevedore liable over to the shipowner on account of the unseaworthy condition of the vessel was because the stevedore had breached the implied warranty of its contract by failing to perform the repair work with due care and in a workmanlike manner. In fact, the court opines, at p. 313:

"* * * the real position is that (stevedore's) negligence continued even though (shipowner) failed to intervene. (And) did not do anything which permits it to be said that the original negligence ceased to operate."

Burrard and Italia Societa are in harmony. The respondent must be held responsible for the unseaworthy condition of libelant's vessel and must save the libelant harmless herein.

Now, dealing with the matter of footnote 2, the libelant should cause the Marshal to make amended return upon his service of writ of foreign attachment or garnishment, showing due and diligent search for respondent within this District and its presence found wanting.